Thank you. Mr. Pierce, go ahead. Good morning. May it please the court, Alan Pierce along with my co-counsel Robert Nichols for Plaintiff Charles Momberg. We are back here before this court three and a half years since we were here the first time because on remand of the two issues that this court sent back to the district court, one being the question of the addendum clause and Dr. Hunsinger's testimony at the damages trial, Judge Scullin has rejected the expert opinion testimony of Dr. Hunsinger, who is the defendant's employee, no bias, no prejudice, no reason to lie against the defendant, that it was not reasonably foreseeable in 2006 to know Mr. Momberg's condition at the time of the damages trial and how he deteriorated significantly, which is the test, reasonable foreseeability. Let me ask you that question just because I was curious. I actually went back and read the statute and it talks about reasonably discoverable in the statute. So that's the actual language of the statute. I know that the cases talk about reasonable foreseeability, but should they be viewed . . . is there any daylight between the two? Well, I believe the courts, including this court in O'Rourke and certainly courts in the Second Circuit and the district courts, and most of the circuits use the reasonably foreseeable test as being the test for newly discovered evidence or intervening . . . I understand that. I understand that. But common usage in the English language would indicate that there's a difference between a reasonable and a discoverable. I'm not sure that that would happen, that kind of thing. Discoverable is we have evidence that it's likely to . . . that's likely to occur. Certainly I think in this case, if we look to what was reasonably discoverable, that's an even stronger case for the plaintiff here. I think so. I think so because the treating physician . . . I was curious as to how you could have a different formulation. I know it goes against all these precedents, but how you could have a different formulation between discoverable and foreseeable was a passing thought I had. And here, the district court rejected . . . and this court in the first appeal said the record at the damages trial with Mr. Hunziker's testimony was materially different than the prior. What about worst case scenario? Is that the same as reasonably foreseeable? I don't believe it is, Your Honor. And that's, we say, that's one of the legal errors that sort of infected the district court's decision on remand is that the court used this worst case prognosis . . . Two circuits have used that, right? First and fifth, and we presented the law review article that lays out the fact that, yeah, the first and the fifth seem to be using this, but every other court, including this court from O'Rourke, is using reasonably foreseeable, and that the standard of worst case prognosis is a stricter, more difficult standard for a plaintiff. Yes, Judge Scullin mentioned reasonably foreseeable a couple of times in his decision on remand. He mentioned worst case prognosis, I think, seven or eight times, and seems to have held the plaintiff to that. Well, apart from that, let's look at the actual Hunziker testimony. Hunziker said that, first of all, there was a diagnosis in January of 2006, I guess it was, right? That's the first . . . I mean, that's when the . . . That's when the claim was filed. The claim was filed, right. And then, obviously, there was a . . . the operation was before that, and we all know about the tragedy of that. And then, he's . . . now, Hunziker says, six years later, that, at the time, his current condition was not reasonably foreseeable, effectively. Yes, Your Honor. He uses a slightly different language, but that's . . . everybody seems to agree that that's effectively what he said. At the time. And he was the only expert who testified, is that right? As to that issue. And, you know, Mr. Nichols learned from the first decision, the pre-damages trial decision, that that was the test, and he asked Dr. Hunziker that, at trial and defense counsel, didn't follow up on that testimony, either with Dr. Hunziker that day, nor did they present any expert testimony nine days later, when they did their portion of the damages trial, that would rebut Dr. Hunziker. What was the basis for their arguing that it was reasonably foreseeable? If they didn't have . . . what evidence did they have? The government's argument . . . You should be asking this of your adversary. Well, I'm happy to say what I think their argument is. Their argument is, there's only two pieces of evidence that either . . . well, one of them doesn't . . . there's two pieces of I would agree are somewhat relevant . . . are relevant. And that is, first, the discharge summary from February of 20 . . . excuse me . . . of 2005. And the government and Judge Gunn looked at the fact that it says that he had incomplete quadriplegia. Well, I don't think I said it in the brief, but if you look up any medical dictionary of incomplete quadriplegia, it simply means that there are still some nerves and conduit of sensory perceptions. And that's exactly Mr. Momberg's problem. He feels the pain. In the Saladino case, the plaintiff didn't feel any pain. He had a complete loss of any sensory motion. The other thing is that in that same discharge summary, that's not Dr. Hunziker's discharge summary. It was dictated by someone else. It refers to the fact that he can walk with a walker. That's not where he is in 2012 at the damages trial at all. So the discharge summary certainly doesn't rebut this expert testimony. There's no testimony in the record, as I see it, that the incomplete quadriplegia will necessarily become complete. No, there's nothing that would suggest that. It did, ultimately. It did. And in fact, it is not until 2011 when Mr. Momberg goes to the Bronx VA thinking he's going there for a plan to get him back to walking that he's told, you'll never walk again. That's June. Not only he developed osteoporosis, right? I believe that's true. I mean, 2011? Well, there was a decline that led to that. At that point, the VA told him in the Bronx, you're never going to walk again. Right. But the osteoporosis is another factor, I think. I'm sort of giving your adversary a foreseeable. That's an independent diagnosis that occurred five years later. And nobody was talking about osteoporosis back in 2006. No. And really, because it's a January 2006 claim filing, it's 2005, and there's just nothing. The other piece of evidence that the government and Judge Scullin referenced was the claim itself, which said paralysis in all extremities. Well, that's not the status of where he was at the damages trial. Again, it's not the same status. And then Judge Scullin and the defendant, he refers to letters from Dr. Hunzinger and his 2010 deposition testimony, and the district court referenced it as appears to show, or the handwritings on the wall. Well, that's after the claims file. Yeah. Two of the letters were the same year, but one was in July and the other. Yes. They may have been in 2006, but they're post-claim filing. So here, I submit, Your Honors, we follow, if this court follows what this court has done, and I provided some supplemental authority to the court about a month ago, a case from the Southern District GCW, where the Southern District applied the right rule, and they followed the rule from the Eighth Circuit, the Michaels case that's in our briefs, that you, on this issue, reasonable foreseeability, discoverable, you look to expert medical testimony on the issue. And in that case, the GCW case and the Michaels case from the Eighth Circuit, you had the treating physician providing that expert testimony, and then you're supposed to look at the other side. There's nothing from the other side. It's not there. What about the, I know your orange light is on here, you're about to end, but I'm curious to what happened before Judge Scullin, with regard to forgetting the pain and suffering, where there was room in the existing ad damnum for another $500,000. I didn't understand that. He said, well, it's not going to make a difference or something? I was confused by that. All I know is what he wrote, and I found that confounding, almost as, maybe more confounding than the fact that we didn't come to grips with, that the district court on remand basically ignored the issue on pain and suffering. When all of this evidence, all the case law shows, the cases we've shown, $10 to $35 million for this type, and in some cases for less, not a quadriplegia, but a paraplegia. And in my, again, my supplemental authority, I provided the court with the Klupchuk case that's $32 million. Younger woman, but if you take her annual life expectancy amount, we get $19 million here. So clearly, our most important issue is, I've heard you ask, and I know from other, what do you want? Well, what we want is for this court to direct the district court to enter judgment in an amount that includes the medical, that was addressed on the first appeal, but is done and over with, of about $3.4 million, but an award of $15 to $20 million for pain and suffering. And is the ad damnum adjusted appropriately at this point? Yes. The ad damnum request on the renewed motion that's at issue here was for $25 million. All right. And that's been, wow. Yeah. And we will gladly stop at $25 million. Thank you, Your Honors. Mr. Xi, you're new to the case. I am new to the case, Your Honor. You bear a famous name. Xi. Well, some people actually think it's Roman numeral 11, but yeah, it's actually pronounced Xi. So I'd like to start with the motion to amend the ad damnum. In response to a question about whether the plaintiff's injuries were foreseeable at the time he filed his claim, Dr. Hunsinger gave it one word, unelaborated answer. The district court rejected that answer because it was contradicted by other evidence in the record, including Dr. Hunsinger's own description of the plaintiff's injuries in 2006, just months after the plaintiff filed his administrative claim. It is the plaintiff's burden to show that the injuries were not foreseeable, and the district court's conclusion that he did not meet that burden is reviewed for clear error. And no clear error mars the district court's reasoning here. Now, regardless of whether Dr. Hunsinger's answer is characterized as his subjective opinion or his opinion on an objective legal standard— Well, I mean, I don't think you can necessarily conclude that it's subjective. He said, ineffectively, not reasonably foreseeable. Every time I hear the word reasonably, I think it's objective. Yeah. So I think the way the question was phrased to him, and I'm quoting here from the testimony, the question was phrased to him as, you know, in your opinion, in your view, was the plaintiff's injuries reasonably foreseeable? And Dr. Hunsinger answered no. So the way the question was phrased to him seems to suggest that his answer was his own subjective opinion about the reasonable foreseeability of the plaintiff's injuries. But even if Dr. Hunsinger was opining on the objectiveness of whether— Is there evidence that a person who has incomplete quadriplegia always is going to end up being a total quadriplegic? We can point to Dr. Hunsinger's 2012 deposition testimony where he was asked, isn't it true that when plaintiffs or when people suffer severe injuries like Mr. Malmberg's, isn't the expectation that they'll get worse rather than better? And Dr. Hunsinger explained, yes, that's generally the expectation. But how much worse is the problem? And the question here is the degree of it. And also the fact that he was never diagnosed early on with osteoporosis, which popped up in 2011, and was the determinative as to whether the doctors were going to say he could walk again, could stand again. Yeah. It's true that there was no diagnosis of osteoporosis. Right. But there was, in his diagnosis, the doctor explained that he had chronic pain and— Right. I know. He was badly injured. But the real question, I think, is whether he was in such a situation that it was reasonably foreseeable that he would be in a situation that he ultimately ended up in six years later. It was certainly a possible worst-case scenario. There's no question about that. But what is the record evidence that . . . And that's where I sort of had a problem. I had a problem with the fact that the only expert here, apart from the district judge, was the doctor who said it wasn't reasonably foreseeable at the time. And the doctor wasn't his own personal physician. The doctor came from your side. That's true. That's certainly true. But it's the plaintiff's burden to show that one of the exceptions to the some certain provision in the Federal Tort Claims Act applies. And the government— Why doesn't that meet the burden, though? Because the evidence was—or the testimony was contradicted by other evidence in the record. It wasn't at the time, because if you go back to January, you have to look at evidence, actual evidence. And the letters were all later in 2006. Right. But the July 2006 letter and the December 2006 letter clearly have relevance to the plaintiff's condition in January 2006, where he filed his administrative claim. It also has relevance as to the credibility of Dr. Huntsinger's testimony. We're talking about actual evidence at the time of the claim. Yeah. And those letters didn't exist at that point. Right. But they speak to what his injuries were in 2006. And I understand that the letters were a few months after he filed his claim, but the plaintiff has never alleged that his condition materially changed from January 2006 to July or December. And beyond— Then it did change radically later. You would agree with that? I mean— Yes. The government has never contested— Totally incapacitated. Yeah. The government has never contested that his condition has deteriorated. The relevant question, though, is whether that deterioration was reasonably foreseeable. The district court found that it was foreseeable at the time he filed his claim, and I don't think the plaintiff has ever identified any clear error to overturn that decision by the district court. Well, I thought he—that's the whole point of his appeal. Right. But I don't think any of those arguments carry the water here. So, he pointed to all the medical record evidence that showed the deterioration of his condition. The district court rejected that argument in his opinion regarding the first two addendum motions. And this court affirmed that opinion in the first time this case was up at appeal, and that's law of the case. And the applies in this case. Wasn't it remanded for the purpose of determining whether the abdomen clause should be—should be raised or not? Yeah. So, I think the language of the court's opinion the first time up was, because it was not clear whether the district court overlooked Dr. Hunsinger's testimony or considered and rejected that testimony, we vacate the denial and remand with instructions to consider that—the motion to increase anew, taking into consideration Dr. Hunsinger's testimony. That's precisely what the district court did. He wrote 15 pages. He considered Dr. Hunsinger's testimony. He explained that as Mr. Malmberg's treating physician, Dr. Hunsinger's testimony is entitled to some weight, but that it was not convincing because it was contradicted by other evidence in the record, including the 2005 diagnosis, the July 2006 letter, the December 2006 letter, as well as the 2012 deposition testimony of Dr. Hunsinger. All right. With regard to the plaintiff's argument that the district court erred by applying the worst case diagnosis—or the worst— Case scenario test. Thank you. Worst case scenario test as opposed to reasonably foreseeable test. We don't think there's any difference in those tests. I think both the First Circuit and the District Court have honestly explained that they're applying O'Rourke. Reasonably foreseeable is different from possibly foreseeable or a foreseeable possibility. You know, there's always a worst case. The worst case is he could die. You know, he might try and walk in his paralysis. He would die. But that's not reasonably foreseeable. And so it falls on a spectrum of what could happen. And, you know, some people are risk averse. Everything is the worst case scenario. That's—and some people are unreasonable in reaching those conclusions. So I don't know where worst case scenario gets you. I think reasonably foreseeable is better than worst case scenario. Reasonably discoverable is better because it's true to the text of the statute. But I'm just—two circuits have come up with worst case scenario, not ours. Right. Again, the government doesn't think that those tests are any different. As I mentioned, the First and Fifth Circuit both purported to agree with O'Rourke, which explained the reasonably foreseeable test. And, you know, if you look at the District Court's opinion, the way he used the worst case scenario language was to ask whether the worst case scenario was reasonably foreseeable. And so I think what the District Court was doing was applying the reasonably foreseeable test. And he—you know, my friend on the other side mentioned that the District Court mentioned the worst case scenario language seven or eight times. He said reasonably foreseeable at least 13 times, as we pointed out in our brief. And so I think, you know, in spirit— He may have been using one to sort of equate to the other, but we don't know which. Sure. I think, you know, again, I think the reasonably foreseeable language and the worst case scenario language, there's two different ways of expressing the same correct idea, which is whether or not the plaintiff's ultimate condition, deterioration, was reasonably foreseeable at the time he filed his administrative claim. And that's—there's no clear error in the District Court's determination that the plaintiff did not meet that burden. Just quickly on the pain and suffering, we agree with the plaintiff that the District Court did not do as this Court asked on remand. And so we think the appropriate remedy, though, is to remand to the District Court to explain his answers. You know, but it is certainly within this Court's power if it were to decide that reasonable range of pain and suffering damages would take the plaintiff above the $6 million threshold. It's certainly within this Court's power to remand with instructions to enter judgment for $6 million. Unless there are any further questions, we're happy to rest on the briefs. Thank you. Mr. Pierce has reserved one minute. Yes. Thank you. I'll be very, very brief. On the—you know, I think it's a great statement from the—that's very applicable here—from the Eleventh Circuit and Frazier that's in our brief. In these cases, the courts do not hold the plaintiff to knowing what the doctors could not tell him. And that's exactly our case. We know the doctors did not tell him he was going to end up like this back before the claim was filed. Um, this Court knows how to remedy a clear error. Interestingly enough, in this Court's first involvement with an addendum in a federal tort claim case, Old Rourke, this Court actually found the district court committed a clear error in granting the motion to increase the addendum. And you—you remedied that error by saying, that's wrong. You can't have the extra money. Here, it's exactly the same, except it's flipped. Here, the clear error is denying the motion. This Court should direct an entry of a judgment that encompasses more than $6 million, as we clearly believe it is. Objective versus subjective. The key testimony from Dr. Hunziker is in the joint appendix at 618 to 619. Interestingly enough, two questions before that testimony, Mr. Nichols asked—told Mr. Momberg that he was going to ask him some fact questions and some opinion questions. And would he agree that in giving an opinion, he would base those on a reasonable degree of medical certainty? And Dr. Hunziker said yes. So we know his opinion testimony is objective here. And the question of some weight, uh, um, my, uh, counsel has said, well, the district court should only give some weight to Dr. Hunziker's testimony. I've already said what he relied on otherwise is virtually all post-claim. And the couple items pre-claim or at the claim certainly don't rebut the testimony. I mentioned the Michaels case from the Eighth Circuit, the Southern District case, GC— That's fine. The courts here know. And this Court's—I cited this Court's decision in Connors. You give a treating physician. Thanks very much. Thank you. We'll reserve the decision, and we adjourn.